UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                            Case No. 19-20451

JAY SCHWARTZ,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DISCOVERY**

Before the Court is Defendant Jay Schwartz's motion to compel the discovery of a multitude of Title III wiretap information related specifically to an unrecorded call on January 22, 2016. (ECF No. 20.) Defendant contends that this call should have been recorded and preserved under the court-ordered procedures, but instead, it was "minimized" (*i.e.*, ignored, or not captured) inappropriately. (*Id.*) Defendant argues that this call comprised exculpatory evidence. (*Id.*) And he predicts that the alleged improper minimization will support a motion to suppress. (*Id.*) Therefore, Defendant seeks an order to compel the government to produce all information related to this call. The motion has been fully briefed, and a hearing was held. E.D. Mich. L.R. 7.1(f)(2). The court will deny the motion.

**I. BACKGROUND**

This case involves an expansive public corruption conspiracy in Macomb County, Michigan. The Defendant in this case, Jay Schwartz, was indicted on July 2, 2019. (ECF No. 1.) Defendant is accused of being a knowing participant in a scheme by

businessman Chuck Rizzo to bribe a public official regarding a Clinton Township waste hauling contract. (*Id.* at PageID.3.) As part of the investigation, FBI special agents and the AUSAs assigned to the case sought to wiretap the phone of co-conspirator Rizzo. (*See* ECF No. 23, PageID.792.)

Investigators alleged that, in addition to providing various legal services to Rizzo and his company, Defendant was also, at Rizzo's behest, providing "free" divorce-related legal services (actually underwritten by Rizzo) to Dean Reynolds, then a Clinton Township trustee. (ECF No. 21-2, PageID.188.)  The government sought to intercept any communication between Defendant and Rizzo regarding Reynold's ongoing divorce case. (*Id.*) The court authorized the interception, but the order included explicit requirements that any communication between Rizzo and Defendant "for the purposes of obtaining legal advice for himself or Rizzo Services" should be minimized in "real-time" by an FBI "Filter Agent." (*Id.* at PageID.187.)  A "Filter" Agent or "Filter AUSA" is one totally independent of the investigation at issue.

The order also required that the Filter Agent implement "normal spot checking" of minimized calls to ensure the contents of the calls had not turned criminal and it required that the government provide a Filter AUSA to review the contents of the calls for privileged information before transcripts could be turned over to the investigating agents. (*Id.*) As a result, investigators intercepted and recorded several conversations involving Defendant Schwartz. (ECF No. 23, PageID.792.)

Defendant has now been charged, based at least in part on the content of these intercepted calls, with "agree[ing] to give thousands of dollars in free legal services to

2

Dean Reynolds with the intent to influence" Reynold's votes on township contracts in favor of Rizzo's company. (ECF No. 1, PageID.3.)

During discovery, the government produced records concerning over 25,000 communications. (ECF No. 23, PageID.805.) Many of the records, including a transcript for a (potentially incriminating) call on January 27, 2016 between Defendant and Rizzo, were included in the production. (ECF No. 20-5.) However, Defendant focuses on one short, forty-five second call on January 22, 2016 between Rizzo and Defendant. The government disclosed that the call in fact took place, but it was minimized in its entirety. (ECF No. 20, PageID.68.) As a result, no recording or transcript of the call's contents exists. The government has not disclosed any agent notes regarding the call. Currently at issue, is Defendant's motion to compel further discovery regarding the minimization of the January 22nd call. (*Id.*)

## II. STANDARD

Federal Rule of Criminal Procedure 16 governs the limited circumstances where discovery is allowed in criminal cases. Specifically, Rule 16(a)(1)(E) describes the disclosures that the government must provide in discovery concerning documents and objects. Fed. R. Crim. P. 16(a)(1)(E). Upon the defendant's request, the government must make all documents or objects available that are "within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;
(ii) the government intends to use the item in its case-in-chief at trial; or
(iii) the item was obtained from or belongs to the defendant." *Id.*

"To obtain discovery under Rule 16, a defendant must make *a prima facie* showing of materiality. Neither a general description of the information sought nor

3

conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the government is in possession of information helpful to the defense." *United States v. Popa*, 369 F. Supp. 3d 833, 836–37 (N.D. Ohio 2019) (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "In assessing materiality, we consider the logical relationship between the information withheld and the issues in the case, as well as the importance of the information in light of the evidence as a whole." *United States v. Lykins*, 428 F. App'x 621, 624 (6th Cir. 2011). Therefore, "information which does not counter the government's case or bolster a defense is not material 'merely because the government may be able to use it to rebut a defense position.'" *Id.* (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)). So, to satisfy the materiality requirement, "there must be an indication that pre-trial disclosure would have enabled the defendant to "alter the quantum of proof in his favor," not merely that a defendant would have been dissuaded from proffering easily impeachable evidence." *Id.* (citing *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir.1993).)

### III. DISCUSSION

Defendant argues that minimization of the January 22, 2016 call was a (possibly intentional) violation of the Wiretap Act, 18 USC § 2518, and that the government's refusal to provide additional discovery amounts to an attempt by the government to avoid turning over exculpatory evidence. (*Id.* at PageID.68-69.) Defendant argues that a January 27th call that was recorded and disclosed by the government can be properly understood only with context from the earlier one. In hopes of later suppressing the January 27th call, Defendant now requests that the court compel the government:

> (1) to produce any documents regarding this minimization decision, (2) to identify who the Filter Agent was on January 22, (3) to identify who the Filter AUSA was

4

      on January 22, (4) to identify who was in the room at the time of the alleged minimization, (5) to explain why it minimized a relevant and exculpatory conversation which discussed the subjects specifically identified as subject to interception in the Court's Order, (6) to explain why none of the Court ordered and required "spot-checking" occurred during the call, (7) to explain how the Filter Agents were educated on what they needed to do to comply with this Court's Order, or (8) to explain why Government agents (with full knowledge of the conversation) thereafter directed a scripted follow-up [January 27, 2016] call with [Defendant] with the express purposes of Rizzo rejecting [Defendant]'s legal advice, instructing him to remain silent so that Reynolds wouldn't recuse himself and would in fact participate in the upcoming vote. (ECF No. 20, PageID.70-71.)

The government asserts that the additional discovery sought by the Defendant is immaterial to his defense because the Wiretap Act's minimization requirement "does not impose an affirmative interception mandate." (ECF No. 23, PageID.795.) The government argues that (1) over-minimalization is not a cognizable claim under the Wiretap Act, which authorizes interception but does not mandate any specific types of calls be recorded. (*Id.* at PageID.767.) Further, it argues that (2) the court's wiretap authorization order "does not impose an [additional] obligation to intercept and record all communications subject to interception." (*Id.* at PageID.799.) Because it contends the information sought could not support a motion to suppress under the Wiretap Act, the government concludes that the records sought are immaterial and "not helpful to the defense [as] a denied suppression motion is not helpful." (*Id.* at PageID.794.)

The government's view is largely correct. The Wiretap Act makes wiretapping illegal "[e]xcept as otherwise specifically provided in this chapter," 18 U.S.C. § 2511, and the act describes specific procedures that must be followed before law enforcement can legally begin "interception of a wire, oral, or electronic communication," *Id.* at § 2518. As the government notes, the statute "authorizes," but does not *require* interception once a wiretap application is approved by a court. *Id.* And the statute

5

provides only three grounds under which "an aggrieved person" may move to suppress the contents of a wiretap:

> (i) the communication was unlawfully intercepted;
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval. *Id.*

Defendant ultimately seeks to challenge the government's *failure* to record the January 22nd phone call, but the court does not view a failure to intercept a call under these circumstances as an "unlawful[] interception" and therefore further discovery on the issue would not be material to a defense.

It is generally the government's burden to show proper minimization occurred, *see United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990), and the point of such minimization is to protect an individual's privacy by preventing the recording of "communications not otherwise subject to interception," 18 U.S.C. § 2518(5). Defendant cites no case law in support of his argument that, once a wiretap is in place, the statute requires the government to intercept all calls, or all of a certain subset of calls. Indeed, as the government points out, law enforcement agencies are free to allocate their not-unlimited wiretap monitoring resources as they see fit, and most wiretaps are not monitored 24 hours a day. *See, e.g., United States v. Mirabal*, No. CR 13-01152 WJ, 2015 WL 13650063, at *3 (D.N.M. Nov. 24, 2015) (noting that it had been 25 years since a 24-hour a day wiretap was conducted in Albuquerque despite hundreds of instances of more limited monitoring). Unless a wiretap authorization order says otherwise, once the interception is authorized, law enforcement is free to listen as frequently—or infrequently—as it may think appropriate, as long as it properly minimizes any intercepted irrelevant calls.

6

Consequently, the mere fact the January 22nd call between Rizzo and the Defendant was either missed by agents, or noticed but minimized, is not *prima facie* evidence of an unlawful interception.

Defendant alternatively argues that the complete minimalization of the January 22nd call evinces that "the interception was not made in conformity with the [court] order of authorization or approval." 18 U.S.C. § 2518 (10). In support, Defendant highlights a provision of the wiretap authorization order, which required that a "normal spot-checking minimization procedure" be implemented and contends that there is no indication that such spot-checking occurred during the January 22nd call. (ECF No. 20, PageID.85 (citing ECF No. 21-2 PageID.187).) Defendant argues that the apparent lack of spot-checking during the January 22nd call shows that the assigned Filter Agent failed to follow the terms of the authorizing court order. (*Id.*) Such spot-checking generally involves an agent occasionally opening the line and listening briefly to a call that is being monitored but minimized to ensure the topic of conversation has not changed from the mundane to something relevant.

The government responds, noting that the (apparent) lack of spot-checking during the January 22nd call does not indicate a lack of compliance with the order because an agent was unlikely to have had time to perform even a single spot-check of a call of such short duration, only forty-five seconds. (ECF No. 23, PageID.806.) The Defendant does not convincingly argue to the contrary, and the court agrees. Assuming

as fact that the filter agent did not spot-check such a short call does not indicate—one way or another—whether the wiretap authorizing order was followed.[1]

In his reply brief, the Defendant also argues that "if the Government is given permission" to record privileged calls, the order obligates the [g]overment to preserve the 'whole story.'" (ECF No. 25, PageID.825.) Reviewing the order, however, the court finds no such general obligation to preserve a "whole record" of calls between Rizzo and the Defendant. The language of the order is inherently deferential, requiring only that a Filter Agent procedure be utilized "any time the FBI seeks to listen to an interception conversation." (ECF No. 21-2, PageID.187.) In other words, the order did not *require* interception of calls, it only mandated practices that must be followed when a call was intercepted before its contents could be turned over to the investigative team. Therefore, the government was under no general obligation to intercept and record the January 22nd call.[2]

---

[1] While Defendant notes that there are "no recordings of any 'spot-checked' portions of other monitors calls," the court sees nothing in the wiretap authorization at issue that required a Filter Agent to record the small snippets of calls he heard while spot-checking. (*See* ECF No. 21-2, PageID.187 (requiring only that "the Filter Agent will implement normal spot checking minimization procedure")). In fact, a practice of *not* recording such snippets seems more protective of the privacy rights of the individuals involved.

[2] Defendant suggests that if the call was not improperly minimized, the only other possible explanation was that "it was intentionally erased/deleted after the fact when the [g]overnment realized it undermined its case-in-chief." (ECF No. 20, PageID.80.) Defendant provides no evidentiary support for such a speculative accusation of misconduct. Indeed, it seems to the court (per Occam's Razor) that a simpler and therefore more plausible explanation is that such a brief connection, if it were not affirmatively minimized, went unrecorded due to a simple technical glitch, human error, or because a Filter Agent was unavailable to review the call in real time. (*See e.g.,* ECF No. 25-2, PageID.833-34 (noting that an August 17, 2015 call was minimized because no Filter Agent was available and that another call was partially missed because the Agent was "in the bathroom").)

Finally, Defendant's reply brief suggests that Defendant has subsequently adopted a new theory supporting his request for information about the January 22nd call. Defendant posits that the records he seeks surrounding the January 22nd conversation help support a larger theory that the government mostly disregarded the restrictions imposed by the wiretap authorization order. (*See* ECF No. 25, PageID.823.)

It is true that when the "protective limitations" of a wiretap order are "completely" disregarded, suppression of the whole wiretap is appropriate. *United States v. George*, 465 F.2d 772, 775 (6th Cir. 1972). In what may be a preview of a forthcoming motion to suppress, the Defendant's reply brief cites 56 recorded calls between Rizzo and his other attorneys that Defendant contends demonstrate that the government failed to minimize as the court order required. (ECF No. 25, PageID.824.)

Absent from Defendant's new line of argument, however, is a sufficient demonstration that the information requested in the present motion—detailed records surrounding a single forty-five second call that was completely minimized—would "alter the quantum of proof" in favor of his broader claim that is largely based on *under* minimization. *See Lykins*, 428 F.App'x at 624. "Sporadic failure" in following the terms of a wiretap authorization order "does not warrant suppressing all intercepts." *United States v. Gray*, 372 F.Supp.2d 1025, 1046 (N.D. Ohio 2005) (citing *United States v. Hoffman*, 832 F.2d 1299, 1307 (1st Cir. 1987)). One additional mistake—especially a non-cognizable one—is unlikely to materially alter the quantum of proof one way or another when there are 56 other contested calls to be considered. Therefore, the court finds the information regarding a single call would not materially support this broader challenge of the government's wiretap practices.

9

## IV. CONCLUSION

Defendant requests the government produce discovery about a brief intercepted conversation that the government failed to record or otherwise minimized in its entirety. The court finds that neither the Wiretap Act nor the authorizing court order required the government to record and preserve the call at issue. *See* 18 U.S.C. § 2518. Because the government was not required to record the call in the first place, the evidence requested will not alter the quantum of proof in favor of the Defendant. Therefore, discovery of the information under Federal Rule of Criminal Procedure 16 is not required.

IT IS ORDERED that Defendant's "Motion to Compel Production of Discovery" (ECF No. 20) is DENIED.

        s/Robert H. Cleland             /
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: November 19, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 19, 2020, by electronic and/or ordinary mail.

        s/Lisa Wagner                 /
        Case Manager and Deputy Clerk
        (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Criminal\19-20451.SCHWARTZ.MotiontoCompel.TC.AAB.RHC.AAB.2.docx