UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                        Case No. 19-20451

JAY SCHWARTZ,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO SUPPRESS THE RIZZO TITLE III WIRETAP AND DENYING
DEFENDANT'S MOTION TO SUPPRESS THE REYNOLDS TITLE III WIRETAP**

Before the Court are Defendant Jay Schwartz's two motions to suppress the contents of Title III wiretaps. Defendant contends that all evidence recovered from wiretaps of both Chuck Rizzo and Dean Reynolds should be suppressed for improper minimization. (ECF Nos. 49, 51.) Defendant alleges that the government violated the terms of the authorizing court orders when conducting the wiretaps. He also alleges that the authorizing orders were defective because they improperly delegated judicial review of the intercepted communications, which included privileged attorney-client conservations, to a government filter team. (*Id.*) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will deny both motions.

**I. BACKGROUND**

This case involves an expansive public corruption conspiracy in Macomb County, Michigan. Defendant in this case, Jay Schwartz, was indicted on July 2, 2019. (ECF No.

1.) Defendant is accused of being a knowing participant in a scheme by businessman Chuck Rizzo to bribe a public official regarding a Clinton Township waste hauling contract. (*Id.* at PageID.3.) As part of the investigation, in July 2015, FBI special agents and the Assistant United States Attorneys ("AUSAs") assigned to the case sought to wiretap the phones of co-conspirators Chuck Rizzo and Dean Reynolds. (*See* ECF Nos. 21-2, 54-2.)

Investigators alleged that, in addition to providing various legal services to Rizzo and his company, Defendant was also, at Rizzo's behest, providing "free" divorce-related legal services (actually underwritten by Rizzo) to Dean Reynolds, then a Clinton Township trustee. (ECF No. 21-2, PageID.188.) The government first sought to intercept any communication between Defendant and Rizzo regarding Reynolds's ongoing divorce case. (*Id.*) The court authorized the interceptions of Rizzo's phone calls, but the order included explicit requirements that any communication between Rizzo and Defendant "for the purposes of obtaining legal advice for himself or Rizzo Services" should be minimized in "real-time" by an FBI "Filter Agent." (*Id.*, PageID.187.) A "Filter" Agent or "Filter AUSA" is one totally independent of the investigation at issue.

The Rizzo wiretap order also required that the Filter Agent implement "normal spot checking" of minimized calls to ensure the contents of the calls had not turned criminal, and it required that the government provide a Filter AUSA to review the contents of the calls for privileged information before transcripts could be turned over to the investigating agents. (*Id.*) During the course of the wiretap, investigators intercepted and recorded several conversations involving Defendant Schwartz. (ECF No. 23, PageID.792.)

At the same time, the government also sought authorization to intercept any communications between Reynolds and Defendant by monitoring Reynolds's phone. (ECF No. 54-2, PageID.2198-99.) The initial application and order to intercept Reynolds's communications required the use of a Filter Agent, separate from the investigative team, to minimize noncriminal contents of intercepted communications. (*Id*., PageID.2240-42.) While the initial Reynolds interception order did not specifically require the use of a full "taint team" with a Filter AUSA, beginning with the August 2015 renewal, the authorizing order included a requirement that a filter AUSA be used to prevent the disclosure of privileged communications. (*See* ECF No. 54-3, PageID.2307-08.)

Defendant has now been charged, based at least in part on the content of these intercepted calls, with "agree[ing] to give thousands of dollars in free legal services to Dean Reynolds with the intent to influence" Reynolds's votes on township contracts in favor of Rizzo's company. (ECF No. 1, PageID.3.)

During discovery, the government produced records concerning over 25,000 communications recorded over the approximately five-month period that the wiretaps were active. (ECF No. 23, PageID.805.) Defendant now points to fifty-six calls turned over in the government's production that he contends were not properly minimized because they contain privileged attorney-client communications on legal matters that were not the subject of the government's investigation. (ECF No. 49, PageID.1468.) Specifically, the fifty-six calls highlighted by Defendant were between Rizzo and six other attorneys who had had contact with Rizzo regarding various "general business and personal matters." (*Id*., PageID.1479) Defendant was not a party to any of these

3

calls himself. (*Id.*) Defendant cites these calls as evidence that filter agents disobeyed the court order, which required the agents to immediately minimize the contents of any calls containing attorney-client communications not relevant to the investigation. (*Id.*, PageID.1478.) Defendant now contends that the fact that so many attorneys' calls made it through the filter procedure suggests that the government "ran roughshod over the [c]ourt's Order, treating it as an afterthought." (*Id.*, PageID.1467.) Therefore, Defendant moves to suppress the contents of the Rizzo wiretap.

Defendant also contends that both the Rizzo and Reynolds wiretaps should be suppressed in their entirety because the court orders authorizing the interceptions were allegedly defective from the start—allowing the executive branch to filter for attorney client-privilege "rather than the calls simply being recorded and turned over to the court for judicial review." (ECF No. 51, PageID.2172.)

## II. TITLE III

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510–2522, establishes a three-tiered procedure for obtaining authorization to intercept wire or oral communications. Strict adherence to these procedural steps is a prerequisite to issuance of a wiretap order. *United States v. Giordano*, 416 U.S. 505 (1974). First, a duly authorized law enforcement officer must obtain approval from the United States Attorney General or a specifically designated Assistant Attorney General in order to apply to a federal judge for a wiretap. *See* 18 U.S.C. § 2516(1). Second, once such approval is obtained, the officer must present to the judge a written application for a wiretap. 18 U.S.C. § 2518(1). Third, the judge must make certain enumerated findings and may issue an ex parte order containing specified

elements. *See* 18 U.S.C. § 2518(3). Title III further provides for the suppression by "[a]ny aggrieved person" of all evidence derived from a wiretap if "the communication was unlawfully intercepted," or "the order of authorization or approval under which it was intercepted is insufficient on its face," or "the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a). Although Title III allows for suppression of communications intercepted in violation of the statute, the Supreme Court has cautioned that "suppression is not mandated for every violation of Title III." *United States v. Chavez*, 416 U.S. 562, 575 (1974).

### III. DISCUSSION

A wiretap authorization order is presumed proper and a defendant has the burden of overcoming that presumption. *United States v. Castillo–Garcia*, 117 F.3d 1179, 1186 (10th Cir. 1997); *see also United States v. Giacalone,* 853 F.2d 470, 482 (6th Cir. 1988) ("[I]t is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.") (quotation omitted).

Title III requires the government to conduct electronic surveillance "in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). When a defendant seeks to challenge minimization, "[i]nitially, the Government must make a prima facie showing of reasonable minimization." *United States v. Gray*, 372 F. Supp. 2d 1025, 1042 (N.D. Ohio 2005) (citing *United States v. Willis*, 890 F.2d 1099, 1102 (10th Cir.1989)). "Then, the burden shifts to the defendant to show that more effective minimization was possible." *Id.* With respect to minimization, the "government is held to a standard of honest effort; perfection is usually not

attainable, and is certainly not legally required." *United States v. Uribe*, 890 F.2d 554, 557 (1st Cir. 1989).

### A. Standing

Because Defendant's phone was not wiretapped, but he was a target of the larger investigation, the first issue is whether Defendant has standing to challenge the Rizzo wiretap in its entirety based on alleged minimization errors during fifty-six calls that did not include Defendant. Defendant argues that as a target of the investigation he has standing to challenge the validity of wiretap procedures, as a whole, based on these calls. The court concludes, however, that Defendant lacks standing to bring such a challenge because it is based only on alleged improper minimization of calls that did not involve Defendant.[1]

Under Title III, only an "aggrieved person" has standing to bring a motion to suppress the contents of intercepted wire or oral communications. 18 U.S.C. § 2518(10)(a). An "aggrieved person" means a person "who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." *Id.* § 2510(11). The Supreme Court has previously found that the definition of "aggrieved person" under Title III "should be construed in accordance with existent standing rules." *Alderman v. United States*, 394 U.S. 165, 175 n.9 (1969). And, "[a] defendant bears the burden of proving that he has standing to contest the admissibility of the evidence in question." *United States v. Azano Matsura*, 129 F. Supp.

---

[1] While Defendant also argues in his briefing that the government's failure to record an allegedly exculpatory call between Defendant and Chuck Rizzo; the court has already explained at length in a previous opinion that the government had no duty "to intercept all calls, or all of a certain subset of calls." *See United States v. Schwartz*, No. 19-20451, 2020 WL 6793329, at *4 (E.D. Mich. Nov. 19, 2020).

3d 975, 978 (S.D. Cal. 2015) (citing *United States v. Singleton*, 987 F.2d 1444, 1447 (9th Cir. 1993)).

Courts have previously found that a "defendant only has standing as to conversations in which he participated, or which occurred over a telephone belonging to him: the fact that he was named in orders, but not intercepted does not give rise to standing." *United States v. Dickerson*, 651 F. Supp. 2d 739, 741 (N.D. Ohio 2009) (citing *U.S. v. Salemme*, 91 F.Supp.2d 141, 381 (D. Mass. 1999), *rev'd in part on other grounds*, 225 F.3d 78 (1st Cir. 2000)). "Stated another way, 'when objecting to the introduction of a given call X, a defendant must show that he or she was a party to call X or that he or she has a privacy interest in the premises housing the tapped phone.'" *Matsura*, 129 F. Supp. 3d at 979 (quoting *United States v. Suquet*, 547 F. Supp. 1034, 1038 (N.D. Ill. 1982)); *see also United States v. Cooper*, 868 F.2d 1505, 1510 (6th Cir. 1989) ("[D]efendant. . . has standing to challenge the overruling of [another defendant's] motion to suppress evidence. . . *only* with reference to the interceptions of the telephone conversations . . . in which [he himself] participated.") (emphasis added).

These precedents clearly show that Defendant Schwartz lacks standing to challenge the fifty-six calls he contends should have been minimized in the Rizzo wiretap Authorization order. Because Defendant does not cite a single wiretap call he participated in that the government failed to minimize, the court concludes he does not have standing to seek suppression of the wiretap as a whole. (Nor does he present any evidence of improper minimization of an intercepted call he participated in during the Reynolds wiretap.) Defendant cites no case law in support of his assertion that a Defendant, merely as the target of an investigation, has standing to suppress the

7

complete contents of a wiretap based on evidence of misconduct that is only found in calls in which he did not participate, so the court rejects this novel claim.[2]

### B. All considered factors weigh against suppression

Complete suppression of all evidence obtained during a wiretap, as sought by Defendant, is a "drastic remedy" limited to "'particularly horrendous'" cases of non-compliance tainting the "'investigation as a whole.'" *United States v. Dimora*, 836 F. Supp. 2d 534, 582 (N.D. Ohio 2011) (quoting *United States v. Hoffman*, 832 F.2d 1299, 1309 (1st Cir. 1987)). Even putting aside Defendant's lack of standing, the evidence of improper minimization presented by Defendant does not show that such a remedy is appropriate here.

Defendant contends that the fifty-six calls between Rizzo and six attorneys (other than Defendant) present sufficient evidence showing that filter agents disregarded the authorizing order's limitations on collecting privileged attorney-client communications. (ECF No. 49, PageID.1478.) From Defendant's perspective, the fact that multiple calls

---

[2] Defendant, in his reply brief, now seems to largely concede that he lacks standing to directly suppress the fifty-six calls he alleged were improperly intercepted, but he argues "the fact that these recordings took place at all is serious evidence that the [wiretap] Authorizing Order was not followed and raises questions regarding whether it was even read in the first place." (ECF No. 56, PageID.2453 (emphasis added).) The standard for suppression, however, requires a defendant to do more than "raise questions." *See United States v. Gray*, 372 F.Supp.2d 1025, 1042 (N.D. Ohio 2005). In many respects, it appears Defendant is now pursuing an implicit request for additional discovery, in the form of a motion to suppress. (See *id.*, PageID.2452 (noting that the government "refuses to confirm the existence of the required [minimization procedures] memorandum," or "[confirm] that live in-person monitoring actually took place").) A motion to suppress is not meant to be a backdoor to discovery that a defendant previously failed to obtain, and in any event, the government's legal position on the need for additional discovery cannot plausibly be considered proof of misconduct on the part of the investigating agents.

from the same easily identifiable attorneys slipped through the minimization process suggests there was a fundamental flaw in the government's compliance with the order.[3]

The government responds to Defendant's factual allegations by first arguing that it has already established "a prima facie case of objectively reasonable compliance with the wiretap requirements" by producing wiretap applications containing "extraordinary detailed description of the intercept and filter procedures," and by transparently providing Defendant with agent notes and over 25,000 recordings of interceptions that took place during the investigation. (*Id.*, PageID.2433.) The government argues that the fifty-six "allegedly improper interceptions Mr. Schwartz highlights do not make this case one appropriate for the rare, drastic remedy of complete suppression." (ECF No. 55, PageID.2432.) The government further argues that some of the highlighted calls do not clearly constitute instances of improper minimization. (*Id.*, PageID.2436-37.) For instance, at least four of the fifty-six calls contain only static, and there is some evidence that attorney James McCann (thirteen calls) also served as a political consultant for Rizzo and organized fundraisers, so it is not clear that all of these calls should have been completely minimized.[4] (*Id.*)

---

[3]     Defendant's briefing, however, does not point to any improperly minimized calls as part of the Reynolds intercept. (*See* ECF No 51, PageID.2173.) So, the court presumes this line of argumentation is limited to the Rizzo wiretap.

[4]     The government also provides a footnote indicating that it is possible that some of the fifty-six calls Defendant highlights were never given to investigating agents in the first place as the government may have inadvertently produced unfiltered versions of some interceptions while trying to correct a technical issue with its initial production during discovery. (ECF No. 55, PageID.2437.) The court would note that the government certainly owes Defendant a definitive determination of whether this occurred and, if so, some kind of accounting of what calls were actually given to investigating agents. Because of Federal Rule of Criminal Procedure 16(c), the government is under a continuing duty to disclose and must promptly correct such a material error in its previous discovery disclosure if it has not done so already. The

The court finds that the government has established a prima facie case of proper minimization. Like in *U.S. v. Giacalone*, the government here has provided copies of the wiretap applications, detailed authorization orders, some agent notes, and recordings of the calls. Combined, this discovery fulfills the government's initial burden of demonstrating the wiretap was conducted properly, so the burden now shifts to the defendant who must "make at least some initial showing of contested facts to be entitled to such a[n] evidentiary hearing." 853 F.2d 470, 483 (6th Cir. 1988) (finding that because "defendants were provided with copies of all the wiretap applications and all the wiretap authorization orders, as well as the logs and the tapes made during the course of the electronic surveillance . . . the district court clearly did not abuse its discretion in denying an evidentiary hearing when defendants failed to show that minimization may not have occurred").

Therefore, Defendant now has the burden of "show[ing] that more effective minimization was possible." *Gray*, 372 F.Supp.2d at 1042. To satisfy this burden, "it is not enough to identify particular calls which [he] contend[s] should not have been intercepted; [he] must establish a pattern of interception of innocent conversations which developed over the period of the wiretap." *United States v. Lawson*, 780 F.2d 535, 540 (6th Cir. 1985) (internal citations and quotations omitted). "If the defendant fails to meet this burden, the court will deny the motion to suppress, 'even if the defendant has identified isolated instances where the [g]overnment failed to minimize non-pertinent conversations.'" *Dimora*, 836 F. Supp. 2d 534, 573 (quoting *Gray*, 372 F.

---

government's voluntary decision to produce the filtered recordings of the intercept means it must do so accurately.

Supp.2d at 1042-43)). The agents' conduct is reviewed for reasonableness. *United States v. Feldman*, 606 F.2d 673, 678 (6th Cir. 1979). The Sixth Circuit has explained that when "applying the reasonableness test adopted by the Supreme Court . . . [courts] have considered three factors in reviewing the Government's attempts to minimize electronic surveillance; the nature and scope of the criminal investigation; the Government's reasonable expectations of the character of conversations; and, the extent of judicial supervision over the surveillance." *Id.* Taking into consideration the evidence presented by Defendant, it is clear that all three of these factors weigh against suppression here.

The scope of the investigation at issue was broad and included a complicated conspiracy between multiple individuals to bride public officials. (*See* ECF No. 54-2.) The character of at least some of the fifty-six calls in question was likely hard to ascertain as Rizzo regularly talked with attorneys regarding legitimate legal matters but sometimes mixed into these calls politically related discussions central to the agent's investigation. (*See, e.g.*, ECF No. 55, PageID.2438 (explaining the political nature of the contents certain calls with James McCann).) Given that the wiretap authorization was predicated on Rizzo's alleged use of Defendant's legal service as a form of bribery, and the relatively large number of different attorneys Rizzo communicated with during the five-month intercept, it is not surprising that agents would sometimes have trouble determining which calls to minimize as privileged. As the government points out, the calls identified by Defendant represent only 0.22% of the 25,000 calls intercepted, and while the numerical error rate is not always determinative, it is important to note that this error rate is significantly lower than the one in *Lawson* where the court found that the

11

defendant had not provided any prima facie evidence of a pattern of abuse. *See Lawson*, 780 F.2d at 540 (finding that "117 of 9,000 interceptions as 'samples' regarding the lack of minimization" did not "establish a pattern of interception of innocent conversations") (quotation omitted). The court concludes that the character of the criminal investigation, and the general nature of the calls intercepted, in the wiretaps at issue lead to the conclusion that the 0.22% minimization-error-rate alleged by Defendant does not evidence unreasonable conduct on the part of the investigating agents. *See Dimora*, 836 F. Supp. 2d at 576.

Defendant, however, also alleges that the degree of judicial supervision is a factor that weighs heavily in favor of suppression because both the Rizzo and Reynolds wiretaps implicate attorney client privilege warranting additional protections that were not provided. In the past, courts have found that judicial supervision over a wiretap "which included the bi-monthly review of progress reports, was more than adequate [judicial supervision], '[indicating] . . . that the agents complied with the minimization requirements.'" *United States v. McCafferty*, 772 F. Supp. 2d 863, 874 (N.D. Ohio 2011) (quoting *Gray*, 372 F. Supp.2d at 1045 (citing *Feldman*, 606 F.2d at 678)). It is undisputed that similar progress reports were required, and provided, as part of the Rizzo and Reynolds renewal orders, so the government has presented prima facie evidence of compliance. (*See, e.g.*, ECF No. 54-2, PageID.2250.)

Defendant argues, however, that there was not sufficient judicial supervision because the authorizing orders themselves "improperly delegated a judicial function to agents of [the] executive branch" by allowing a taint team of government agents to screen and minimize privileged material unrelated to the investigation without a

12

preliminary review by a magistrate or special master. (ECF No. 51, PageID.2173.) In support of his argument, Defendant relies almost entirely on a recent decision by the Fourth Circuit. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019).

*In re Search Warrant* involved the review of records seized during the execution of a search warrant on a Maryland law firm. *Id.* at 164. The law firm argued that allowing a government filter team to make privilege determinations regarding the firm's records "inappropriately assigned judicial functions to the executive branch." *Id.* The Fourth Circuit agreed, "[p]ut succinctly, the Privilege Assessment Provision erroneously authorized the executive branch—that is, the Filter Team—to make decisions on attorney-client privilege and the work-product doctrine." *Id.* at 177. The court reasoned that allowing a filter team to shift through the documents "left the government's fox in charge of guarding the Law Firm's henhouse," creating perverse incentives. *Id.* at 178. The end result of the court's ruling, however, was not suppression of the documents, but instead injunctive relief requiring the judicial review of the privileged material. *Id.* at 183.

Defendant has cited no case law suggesting that the holding of *In re Search Warrant* has been extended to Title III wiretaps that may intercept attorney-client communications justifying complete suppression. *See also In re Search Warrants Executed on Apr. 28, 2021*, No. 21-MC-425 (JPO), 2021 WL 2188150, at *2 n.3 (S.D.N.Y. May 28, 2021) (noting *In re Search Warrant*, 942 F.3d at 159 "did not hold that the government's use of a filter team is categorically inappropriate" even when the

13

search of an attorney's office is at issue). The court finds that the wiretaps in the present case are easily distinguishable from this non-binding precedent for two reasons.

First, in contrast to a search of a law firm's records, the nature of a Title III wiretap is more limited in scope, and such a wiretap requires quicker investigatory decisions making initial review by a judicial officer impractical. Title III wiretaps are meant to be covert and allow investigators to expediently pursue leads that they uncover. If the government were required to first have any intercepts screened by a magistrate or court-appointed special master for attorney-client privilege, it seems likely that both the speed and the efficacy of the investigatory process would be compromised, as the information could become stale by the time it was vetted. The Fourth Circuit did not need to weigh such factors in its decision because the nature of the investigation at issue in the case was quite different. The court sees no reason to impose such a cumbersome and novel burden on Title III wiretaps where the amount of attorney-client privileged information that could potentially be uncovered is much more limited in scope.

Second, unlike *In re Search Warrant*, the court orders presently at issue only authorized the intercept of two non-lawyers' calls, and only a very small subset of the intercepted conversations implicate attorney-client privilege of the *targeted* individuals. It would at least be plausible to argue that the reasoning of *In re Search Warrant* could apply if the court had instead ordered an intercept of all calls to an attorney's phone because the attorney-client privilege of multiple non-targeted clients would be implicated. But Defendant's application of precedent to the present case would require the court to dispense with any limiting principle. If the court is required to directly screen

14

collected evidence for attorney-client privileged here, by the same logic, any search warrant issued for a location (corporate office) or device (smartphone) that could plausibly contain some attorney-client documents would also now require the court to first sift through the information recovered before investigators could review it. This is simply not how search warrants are actually executed today.

In sum, since all three factors considered by the Sixth Circuit in *Feldman* weigh against suppression of both the Reynolds and Rizzo wiretaps, the court concludes that suppression is not appropriate here. *See* 606 F.2d at 678.

### IV. CONCLUSION

Defendant sought complete suppression of the contents of two court authorized Title III wiretaps due to improper minimization. The court finds that Defendant lacks standing as a target to challenge the government's collection of telephone calls to which he was not a participant and that the court ordered minimization procedure was proper. Defendant has failed to present enough evidence justifying the "drastic remedy" of total suppression. *See Dimora*, 836 F. Supp. 2d at 582. Accordingly,

IT IS ORDERED that Defendant's "Motion to Suppress Rizzo Title III Wiretap" (ECF No. 49) is DENIED.

IT IS ORDERED that Defendant's "Motion to Suppress Reynolds Title III Wiretap" (ECF No. 51) is DENIED.

s/Robert H. Cleland              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: September 1, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 1, 2021, by electronic and/or ordinary mail.

<u>s/Lisa Wagner                              /</u>
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Criminal\19-20451.SCHWARTZ.MotionstoSuppress.AAB.docx