# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

      Plaintiff,                            Case No. 19-cr-20451

v.                                    Hon. Robert H. Cleland

**JAY SCHWARTZ,**

      Defendant.

_____/

Michael J. Freeman
Special Assistant Attorney to the
Attorney General in the EDMI
Four Seagate, Suite 308
Toledo, OH  43604
(419) 241-0724
Michael.Freeman2@usdoj.gov

Gene Crawford
Special Assistant Attorney to the
Attorney General in the EDMI
Four Seagate, Suite 308
Toledo, OH 43604
(419) 241-0726
gene.crawford@usdoj.gov

Thomas W. Cranmer (P25252)
Gerald J. Gleeson, II (P53568)
Miller, Canfield, Paddock and Stone, P.L.C.
840 West Long Lake Road, Suite 150
Troy, Michigan  48098-6358
Telephone: (248) 879-2000
cranmer@millercanfield.com
gleeson@millercanfield.com
*Attorneys for Defendant*

_____/

# DEFENDANT'S MOTION IN LIMINE
# TO PRECLUDE ROBERT BEECKMAN FROM OFFERING
# SPECULATION AND IRRELEVANT TESTIMONY

Defendant Jay Schwartz, by and through his attorneys Miller, Canfield, Paddock and Stone, P.L.C., respectfully requests that this Court preclude Agent Beeckman from offering irrelevant and speculative testimony, as described more fully in the accompanying brief.  Concurrence in the relief sought by this motion was requested pursuant to Local Rule 7.1, but not obtained.

Respectfully submitted,

Miller, Canfield, Paddock and Stone, P.L.C.

By:   s/ Gerald J. Gleeson, II

Thomas W. Cranmer (P25252)
Gerald J. Gleeson, II (P53568)
840 West Long Lake Road, Suite 150
Troy, Michigan  48098-6358
Telephone: (248) 879-2000
cranmer@millercanfield.com
gleeson@millercanfield.com
*Attorneys for Defendant*

Dated:  September 30, 2021

1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

      Plaintiff,                         Case No. 19-cr-20451

v.                                     Hon. Robert H. Cleland

**JAY SCHWARTZ,**

      Defendant.

_____/

| | |
|---|---|
| Michael J. Freeman | Thomas W. Cranmer (P25252) |
| Special Assistant Attorney to the | Gerald J. Gleeson, II (P53568) |
| Attorney General in the EDMI | Miller, Canfield, Paddock and Stone, P.L.C. |
| Four Seagate, Suite 308 | 840 West Long Lake Road, Suite 150 |
| Toledo, OH  43604 | Troy, Michigan  48098-6358 |
| (419) 241-0724 | Telephone: (248) 879-2000 |
| Michael.Freeman2@usdoj.gov | cranmer@millercanfield.com |
| | gleeson@millercanfield.com |
| Gene Crawford | *Attorneys for Defendant* |
| Special Assistant Attorney to the | |
| Attorney General in the EDMI | |
| Four Seagate, Suite 308 | |
| Toledo, OH 43604 | |
| (419) 241-0726 | |
| gene.crawford@usdoj.gov | |

_____/

# BRIEF IN SUPPORT OF
# DEFENDANT'S MOTION IN LIMINE TO PRECLUDE ROBERT
# BEECKMAN FROM OFFERING SPECULATION AND IRRELEVANT
# TESTIMONY

## STATEMENT OF QUESTION PRESENTED

I.     Should Agent Beeckman be allowed to testify regarding his experience obtaining high-profile public corruption convictions of Kwame Kilpatrick, Monica Conyers, and Alonzo Bates, despite the fact that such convictions have no relation to the Government's allegations against Mr. Schwartz?

**Defendant Jay Schwartz answers:  No.**

II.    Should Agent Beeckman be allowed to testify regarding his experience working as a professor and lecturer on public corruption, criminal procedure, and the law, even though such experience does not tend to prove any fact of consequence and Agent Beeckman is being offered as a lay witness?

**Defendant Jay Schwartz answers:  No.**

III.   Should Agent Beeckman be allowed to offer narrative spin and speculation regarding the meaning of plain language telephone intercepts that will be played for the jury?

**Defendant Jay Schwartz answers:  No.**

i

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

Fed. R. Evid. 401

Fed. R. Evid. 403

*United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013)

ii

## INTRODUCTION

When he testified in front of the Grand Jury, Agent Beeckman presented himself as a lay expert in public corruption cases writ large, offering free-ranging opinion testimony regarding the true meaning of plain language call intercepts played for the Grand Jury.  For example, Agent Beeckman described his background in securing the convictions of Kwame Kilpatrick, Monica Conyers, and Alonzo Bates.  He offered testimony regarding his public corruption expertise, including his lecturing circuit as part of "Project Integrity" and his background as a professor of "criminal procedure and the law" at Ferris State University.  And when wire intercepts of telephone calls were played for the Grand Jury, Agent Beeckman felt free to offer his speculation regarding what Mr. Schwartz "knew" and his interpretation regarding what the plain language of the participants in the calls "really meant."

None of this is permissible under the Federal Rules of Evidence.  Testimony is only relevant if it tends to prove or disprove a fact of consequence — and Agent Beeckman's prior experience on unrelated cases and lecturing at Ferris State does not meet this bar.  Even if it were minimally relevant, it would still require exclusion for being more prejudicial and confusing than probative as it tends to suggest to the jury that Agent Beeckman is an expert worthy of deference.  As for Agent Beeckman's "interpretation" of intercepted phone calls, the Sixth Circuit has made

clear that "Case law from our circuit, both published and unpublished, has tended to prohibit agents from interpreting phone calls[.]" *United States v. Freeman*, 730 F.3d 590, 596 (6th Cir. 2013).

Mr. Schwartz therefore respectfully requests that this Court preclude Agent Beeckman from:  (1) offering testimony regarding his work on unrelated public corruption cases, (2) describing his experience as a lecturer/professor in public corruption, criminal procedure, and the law, and (3) narrating or interpreting the plain language of phone call intercepts played for the jury.

## ARGUMENT

### A.     Agent Beeckman Should be Precluded From Discussing Unrelated Cases and His Lecturing Circuit.

Before the Grand Jury, the Government elicited testimony from Agent Beeckman apparently designed to impress the Grand Jury with Agent Beeckman's credentials and past experience.  For example, the Government asked Agent Beeckman to describe all of the major headline-grabbing public corruption cases that he has worked on for the past ten years:

Q.     What are some of the cases you've worked on in the last like ten years?"

A.     I was the case agent on the Kwame Kilpatrick case.

Q.     And also you worked on Monica Conyers?

A.     Monica Conyers, Alonzo Bates, things that happened in Wayne County, police corruption.

2

> **Q.**   Police corruption cases as well?
>
> **A.**   Yes.

Ex. A, 10-26-21 GJ Transcript at 3.  Then, the Government elicited testimony

regarding Agent Beeckman's credentials on the lecture circuit:

> **Q.**   And you also are a speaker on public corruption, you've spoken
>
>    throughout the world, haven't you, in different countries?
>
> **A.**   Yes.  I do a presentation called Project Integrity.

Ex. A, at 3.  And the Government made sure to let the Grand Jury know that Agent

Beeckman has been a professor in "criminal procedure and the law" too:

> **Q.**   You've also been an adjunct professor in the area of criminal procedure
>
>    and the law, haven't you?
>
> **A.**   Yes.  For six years at Ferris State University I did that.

Ex. A, at 4.

The only possible reason for this testimony was to impress upon the Grand

Jury that Agent Beeckman is an expert in public corruption and criminal procedure,

and that his opinions deserve a degree of deference.  But Agent Beeckman is a lay

witness, not an expert, which renders such puffing background testimony wholly

improper.

There is nothing about Agent Beeckman's prior work on unrelated high-

profile criminal cases that tends to prove or disprove any fact in consequence in this

38160773.1/156038.00001

action.  Evidence may only be introduced if it has "any tendency to make a fact more or less probable than it would be without the evidence" and if it is a "fact … of consequence in determining the action."  Fed. R. Evid. 401.  Agent Beeckman's reference to disgraced public figures such as Kwame Kilpatrick, Monica Conyers, and Alonzo Bates has absolutely nothing to do with Mr. Schwartz and the allegations facing him.  Such evidence only serves to inflame the jury and unfairly tarnish Mr. Schwartz by referenced to famous convictions that Mr. Beeckman counts among his achievements.

This Court may exclude otherwise relevant evidence if its probative value is "substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Not only do such references by Agent Beeckman threaten to mislead and confuse the jury, they conjure up the jury's likely awareness of news in Detroit over the past ten years to suggest that, like the disgraced Kilpatrick, Conyers, and Bates, Mr. Schwartz is also worthy of conviction.

The risk of unfair prejudice stemming from irrelevant testimony is also present with Agent Beeckman's testimony regarding his "Project Integrity" lecture circuit and his former role as a professor of "criminal procedure and the law" at Ferris State.  The risk of prejudice from Agent Beeckman's "Project Integrity"

4

lecture is self-evident — it suggests to the jury that Agent Beeckman is an expert in integrity, such that his services are in demand world over.  Were he an expert providing expert testimony in some discrete area, such expertise might be relevant to establish himself as an expert in his proffered field.  *See* Fed. R. Evid. 702.  But he is not — Agent Beeckman is the case agent through whom the Government intends to submit most of its factual case, so his testimony must be "rationally based on [his own] perception" and "personal knowledge of the matter."  *See* Fed R. Evid. 701; Fed R. Evid. 602.  His prior experience lecturing at Ferris State and as part of "Project Integrity" have nothing to do with his personal observations in this case, and such experience does not make any fact in consequence in this case more or less probable. To the extent Agent Beeckman is offered as a pseudo-expert to the jury,[1] such credentialing can only serve to confuse the issues and unfairly prejudice Mr. Schwartz.[2]

---

[1] Moreover, to the extent that Agent Beeckman proffers testimony suggesting that he is an expert in "law and criminal procedure," Mr. Schwartz respectfully asserts that it is the sole province of the Court, not Agent Beeckman, to instruct the jury on law and criminal procedure.  *See United States v. Mazumder*, 800 F. App'x 392, 395 (6th Cir. 2020) (finding an expert's testimony properly excluded "as infringing on the judge's role in instructing the jury on the law.").

[2] All that is necessary to lay the foundation for Agent Beeckman's testimony is that he is a FBI agent in good standing.  Nothing more is required regarding his background.

Mr. Schwartz therefore asks that this Court exclude all testimony from Agent Beeckman regarding his prior lecturing and teaching experience (including any mention of "Project Integrity"), as well as all references to other corruption cases that Agent Beeckman has worked on.

**B.     Agent Beeckman Should Not Be Allowed to Speculate Regarding the Mental State of Others or Opine on the Meaning of Plain Words**

Agent Beeckman's Grand Jury testimony reveals that the Government plans to introduce Agent Beeckman's speculation regarding the intent and meaning of otherwise plain language phone calls.  This testimony must also be excluded as Agent Beeckman's may only testify regarding his personal knowledge — he may not speculate as to the true intent and meaning of words exchanged between others, particularly when the jury will hear the conversation for themselves.

Throughout his Grand Jury Testimony, Agent Beeckman offered his (usually led) opinion regarding the mental impressions of Mr. Schwartz.  For example, when asked about the promissory note prepared by Anthony Selva for Reynolds, Agent Beeckman testified that Mr. Schwartz was aware of the Selva/Reynolds fraud, despite a lack of any concrete evidence suggesting that fact:

> **Q.**     So is it clear from that call in your mind that Schwartz is aware of this false promissory note?"
>
> **A.**     Oh, yes."

<u>Ex. A</u>, at 43.   Earlier, Agent Beeckman agreed with the Government's recharacterization of Mr. Schwartz's words to argue that Mr. Schwartz had suggested a "phony loan" to Reynolds:

> **Q.**   So essentially they're going to – Jay Schwartz is advising that you need a straw person, a phony loan that someone that look like they're really loaning it but really it's going to be Rizzo paying it?
>
> **A.**   That's exactly it, yes.

*Id.* at 39-40.  Agent Beeckman did not constrain himself to reinterpreting the actual words spoken during wiretapped calls either — he felt free to unmoor himself from actual words that he heard and instead testify confidently about conversations that he had never listened to in the first place:

> **A.**   . . . At some point here, the underling attorney was phased out and Schwartz started taking over the divorce himself. And so he's giving direct legal advice to Reynolds. And this is Reynolds' repeating what the lawyer had told him when he's talking to Selva, and he says that Jay Schwartz told him you take care of Chuck, meaning help with the contract, and we'll take care of you.
>
> **Q.**   Meaning free legal advice in the divorce?
>
> **A.**   Right.
>
> …

7

**Q.**    So when Reynolds tells Selva, quote, "No, I understand, you take care of Chuck, he says we'll take care of you," he's repeating what Jay Schwartz the attorney said?

**A.**    Right."

<u>Ex. A</u>, at 35-36.

This is argument, not evidence.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  But the testimony of a witness (other than an expert) must be based on what the witness saw and heard or otherwise experienced through his or her own senses.  Fed. R. Evid. 602 Adv. Comm. Notes (1972).[3]  And personal knowledge is a matter of conditional relevance.  *Id.*; Fed. R. Evid. 104(b).

A lay witness may offer opinion testimony only where (1) the witness has been qualified as an expert or (2) that opinion is "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue."  Fed. R. Evid. 701. "The burden is on the proponent to provide adequate foundation for the testimony."  *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013).  "Such lay opinion testimony is permitted under Rule 701

---

[3] Stylistic changes aside, the substantive content of this Rule has not changed in 40 years.

because it has the effect of describing something *that the jurors could not otherwise experience for themselves* by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event."[4] *Freeman*, 730 F.3d at 595 (6th Cir. 2013) (quoting *United States v. Jayyousi*, 657 F.3d 1085, 1120 (11th Cir. 2011) (Barkett, J., concurring in part and dissenting in part) (emphasis added). "When a law enforcement officer is not qualified as an expert by the court, her testimony is admissible as lay opinion only when the law enforcement officer is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred." *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001). "Case law from our circuit, both published and unpublished, has tended to prohibit agents from interpreting phone calls[.]" *Freeman*, 730 F.3d at 596.

In *Freeman*, for example, the government entered only 77 out of 23,000 recorded phone calls into evidence at trial, then relied upon the case agent to narrate "his personal impressions of the recorded conversations," "interpret[ing] the conversations as they were played" and offering opinions "rang[ing] from voice and

---

[4] Such opinion testimony encompasses "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." Fed. R. Evid. 701 Advisory Comm. Note to 2000 Amend.

nickname identifications to substantive interpretations of the meaning of the various statements." *Id.* at 594.  The Sixth Circuit found two fatal flaws with this approach.

First, the court concluded that the case agent's testimony lacked sufficient foundation, as he "repeatedly substantiated his responses and inferences with generic information and references to the investigation as a whole," and testified "to the meaning of numerous phone conversations irrespective of whether his testimony, at points, was mere speculation or relied on hearsay evidence." *Id.* at 596.  Second, the court held that the case agent's testimony unduly invaded the province of the jury, since he repeatedly testified to the meaning of generalized statements in the recorded conversations that the jury was equally well-positioned to interpret. *See id.* at 598–99 (noting that agent testified that "'situation'" referenced in a phone call involved the very theft and murder-for-hire plot at issue in the case).  As the Sixth Circuit put it, "[s]omehow, when passed through Agent Lucas's interpretive lens, this cryptic exchange becomes crystal clear, and his explanation fits perfectly with the prosecution's view of the case." *Id.* (emphasizing that "[a]n agent presented to a jury with an aura of expertise and authority increases the risk that the jury will be swayed improperly by the agent's testimony, rather than rely on its own interpretation of the evidence").  The Sixth Circuit therefore vacated the defendant's conviction. *Id.* at 600.

10

Agent Beeckman's Grand Jury testimony strongly suggests that he will offer similar speculative testimony to the jury.   Time and again, Agent Beeckman confidently asserted to the Grand Jury that he was aware of Mr. Schwartz's personal knowledge and mental intent, *see* <u>Ex. A</u> at 39-40, 43, even going so far as to claim that Reynolds was accurately conveying to Selva Mr. Schwartz's prior legal advice to Reynolds, even though Agent Beeckman was not present and there is no record of the alleged advice. *See* <u>Ex. A</u>, at 35-36.   But the Sixth Circuit rejects a case agent's attempt to testify as a lay witness, yet simultaneously instruct the jury what inferences it should draw from recorded conversations that it has heard.   "[A] case agent testifying as a lay witness may not explain to a jury what inferences to draw from recorded conversations involving ordinary language.   At that point, his testimony is no longer evidence but becomes argument." *Freeman*, 730 F.3d at 598.

Jurors are able to draw their own conclusions based upon their own real-life interactions and experiences regarding the meaning of plain language played in recorded phone calls — Agent Beeckman's narrative "gloss" and speculation regarding what the participants in the calls "were really saying" is improper and unnecessary.   "[Testimony regarding] matters that were equally within the competence of the jurors to understand and decide, [was] inadmissible under Fed. R. Evid. 701 and 702." *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988).   Agent Beeckman must confine his testimony to his personal experiences

11

and first hand observations — he may not be allowed to opine and narrate the plain language of phone calls between others, nor may he speculate regarding his opinion on the mental status and personal knowledge of other individuals. *See Freeman*, 730 F.3d at 596-97 (Admitting such testimony carries with it the substantial risk that the agent will testify "based upon information not before the jury, including hearsay, or at the least, that the jury could think he has knowledge beyond what is before them" and improperly defer to the agent's improper "expert," extra-record testimony.); *Peoples*, 250 F.3d at 640  (reversing trial conviction where "Under the guise of offering law opinion, Agent Neal was allowed to emboss apparently neutral conversations between the defendants with the imprimatur of the government's case.").

## CONCLUSION

For the foregoing reasons, Defendant Jay Schwartz respectfully requests that this Court exclude all testimony from Agent Beeckman regarding: (1) his involvement in other public corruption cases, (2) his background as a professor and lecturer in public corruption, and (3) his speculation and recharacterization of otherwise plain conversations from wiretaps played before the jury.

38160773.1/156038.00001

Respectfully submitted,

Miller, Canfield, Paddock and Stone, P.L.C.

By:  s/ Gerald J. Gleeson, II
      Thomas W. Cranmer (P25252)
      Gerald J. Gleeson, II (P53568)
      840 West Long Lake Road, Suite 150
      Troy, Michigan  48098-6358
      Telephone: (248) 879-2000
      cranmer@millercanfield.com
      gleeson@millercanfield.com
      *Attorneys for Defendant*

Dated:  September 30, 2021

13

38160773.1/156038.00001

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2021, I electronically filed the foregoing document, with the Clerk of the court using the ECF system which sent notification of such filing to all attorneys of record.

s/ Gerald J. Gleeson, II
Gerald J. Gleeson, II (P53568)
Miller Canfield Paddock & Stone, P.L.C.
840 West Long Lake Road, Suite 150
Troy, Michigan 48098
Telephone: (248) 267-3296
gleeson@millercanfield.com

1