UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**JAY SCHWARTZ,**

    Defendant.

Case No. 19-cr-20451

Hon. Robert H. Cleland

_____/

| | |
|---|---|
| Michael J. Freeman<br>Special Assistant Attorney to the Attorney General in the EDMI<br>Four Seagate, Suite 308<br>Toledo, OH  43604<br>(419) 241-0724<br>Michael.Freeman2@usdoj.gov<br><br>Gene Crawford<br>Special Assistant Attorney to the Attorney General in the EDMI<br>Four Seagate, Suite 308<br>Toledo, OH 43604<br>(419) 241-0726<br>gene.crawford@usdoj.gov | Thomas W. Cranmer (P25252)<br>Gerald J. Gleeson, II (P53568)<br>Miller, Canfield, Paddock and Stone, P.L.C.<br>840 West Long Lake Road, Suite 150<br>Troy, Michigan  48098-6358<br>Telephone: (248) 879-2000<br>cranmer@millercanfield.com<br>gleeson@millercanfield.com<br>*Attorneys for Defendant* |

_____/

## **DEFENDANT'S REPLY TO GOVERNMENT'S OMNIBUS MEMORANDUM OPPOSING DEFENDANT'S MOTIONS IN LIMINE (DKT. NOS. 65, 66, AND 67)**

A.    **Selva is Not a Coconspirator with Mr. Schwartz**

Much depends on Angelo Selva's alleged status as a coconspirator. The Government says he is a coconspirator, despite the fact that they do not have a scintilla of evidence that Mr. Schwartz (or Mr. Rizzo) and Selva ever spoke to one another or that Mr. Schwartz (or Mr. Rizzo) was even aware that Angelo Selva existed (much less that they shared any sort of common, unspoken aim). The Government's reliance on hearsay and its efforts to squeeze these speculative conversations into a co-conspirator exception again shows why the Court should resolve the issue in advance of trial.

Contrary to its argument, the Government's own summary of its evidence admits that Selva engaged in rampant speculation regarding Mr. Schwartz's intent. Mr. Schwartz sent Reynolds a form promissory note to support a loan from a real lender. There is no evidence that shows Schwartz sent the document with the knowledge that Selva existed, would critique it, or speculate on why Mr. Schwartz sent it in the first place. Selva never sought any input from Schwartz regarding his revisions, and neither Reynolds nor Selva consulted Schwartz while they pondered who would be the best person to pose as a fake lender (and one steady enough to persuasively perjure himself if called to testify).

Selva "interpreted" Mr. Schwartz's supposed true intent regarding these plain words, and "speculated" that Mr. Schwartz, by circulating a real promissory note,

1

might be "distancing" himself from Selva and Reynold's criminal scheme. There is no evidence of Mr. Schwartz's alleged criminal intent to "conceal" a conspiracy, other than Selva's rank speculation about a man he had never met and what Mr. Schwartz "really" meant by his legal advice.

The Government makes clear that its sole basis for admitting Selva's conversation with Reynolds is Federal Rule of Evidence 801(d)(2)(E). But, as has been argued to the Court elsewhere,[1] Selva was not a coconspirator with Mr. Schwartz. Without repeating the substance of that pending motion, Selva was the disbarred and disgraced lawyer that Reynolds went to for repeated consultation and advice about nearly every event in his life. Selva, in turn, played the bigshot with Reynolds and pretended that he was a lawyer again, doing his "research" on promissory notes and providing armchair speculation about what Mr. Schwartz "really meant" when he told Reynolds to get a real loan and document it with a promissory note.

But despite his claimed omniscience, this armchair legal consigliere has no special insight into Mr. Schwartz's intent or actions. Selva's "advice" to Reynolds was just bluster between two individuals trying to figure out their next scam. And without any evidence linking Mr. Schwartz to this separate plan between Reynolds

---

[1] Mr. Schwartz has filed a motion to exclude Selva's testimony, and that motion is currently pending before the Court. *See* ECF # 27

2

and Selva, the evidence in inadmissible.[2] The Government essentially asks the Court to assume Schwartz had a nefarious intent and up front knowledge that the money was coming from Rizzo.

The Government claims that Selva's alleged knowledge is not speculation because he is detailing the alleged aims of the conspiracy, including "Mr. Schwartz's plan to conceal the crime." ECF # 71, PageID.2818. In other words, the Government claims that there was an existing common scheme between Mr. Schwartz, Reynolds, *and* Selva, even though there is no evidence that Schwartz knew anything about Selva (or anyone acting in his role). Indeed, the Government seems to suggest that this plan was that Mr. Schwartz would:

1. Provide a real promissory note (even though he meant to use a fake one);

2. Recommend that Reynolds obtain a real loan (even though he really meant a fake one), all in order to:

3. Conceal his real legal advice (which was apparently to commit a crime) with the fake legal advice (to get a real loan) supported by actual documents and the plain language of his email.

If this was indeed the pre-existing common aim and understanding between these three individuals, it is unclear why Reynolds needed it explained to him by Selva.

---

[2] For this same reason, Selva's speculation about Reynold's statement about what Mr. Schwartz allegedly said to Reynolds is equally barred. Selva is not a coconspirator with Mr. Schwartz, but he was with Reynolds. Selva's personal opinion based on what Reynolds told him that Mr. Schwartz said is therefore irrelevant and hearsay — Selva has no basis for his opinion, he's just talking.

3

38267426.2/156038.00001

Case 3:19-cr-20451-RHC-EAS  ECF No. 72, PageID.2835  Filed 10/21/21  Page 5 of 9

A review of the September 11 call reveals that, by his own words, Reynolds was irritated that Mr. Schwartz was recommending an arms-length transaction. Indeed, the point of the call was for Reynolds to get an explanation from his co-conspirator, Selva, about what Schwartz was doing. Selva's answer was to "reinterpret" Mr. Schwartz's straightforward advice in a criminal angle. Rather than simply call Mr. Schwartz and add him to conversation (which would presumably be what true conspirators would do), Selva offered nothing more than rank speculation.

Prior to Selva's encouragement and speculation regarding what Mr. Schwartz (a man he had never met) "really meant," Reynolds was left with the straightforward legal advice that a loan should be real, it should be supported by an arms-length promissory note, and that Reynolds should negotiate the terms with whoever was loaning him the money. That's it. Far from evidencing some sort of overarching agreement or common aim between the three individuals, the Selva/Reynolds conversation instead shows that the criminal activity was prompted by Selva and greedily accepted by Reynolds — all without the involvement or knowledge of Mr. Schwartz who never even knew Selva or the conversation with Reynolds existed. There's no evidence of a common agreement or understanding between Mr. Schwartz, Reynolds, and Selva in that call — if there were, Reynolds would not have needed Selva's dubious assistance in figuring out the alleged criminal plan.

4

38267426.2/156038.00001

**B.      Agent Beeckman's Testimony is Not Based on His Personal Knowledge — It's Based on Statements Given to Him By Actual Percipient Witnesses the Government Does Not Want to Call.**

Agent Beeckman has little personal knowledge of the underlying facts of the case. He was certainly involved in the investigation, but his information is all second-hand. Everything he "knows" is based on statements made to him by Rizzo or wire tapped conversations that he has reviewed.

Statements made to Agent Beeckman by individuals who are not testifying are hearsay, plain and simple. If the Government wants to introduce evidence regarding what Rizzo told Agent Beeckman throughout his cooperation, or what other percipient witnesses later relayed to Agent Beeckman, then it must call those percipient witnesses in the first instance. It may not rely on Agent Beeckman to narrate the personal knowledge of others and pass it off as his own — he wasn't there, he doesn't have personal knowledge of what was said or done, so he can't offer testimony on those points to the jury. But based on its recent witness list, the Government apparently does not plan on calling Rizzo to testify — and for good reason. But, just the same, it can't then use an FBI Agent (Beeckman) to inject the information he learned from that absent witness (Rizzo). This is exactly what the Confrontation Clause forbids. The Government conceded such information is

testimonial on appeal in *United States v. Khan*, ____ F.3d ___, 2021 WL 4026781 (6th Cir. September 3, 2021).[3]

Otherwise, the Government promises that Agent Beeckman will not be interpreting the plain language of wiretaps (*i.e.*, telling the jury what the conversations "really meant"), will not be bolstering his testimony with references to high-profile criminal investigations he has handled, and will not be testifying about "Project Integrity" and his teaching experience. Such testimony peppered Agent Beeckman's grand jury testimony and testimony in the Reynolds trial, but it appears the Government has committed to a different approach in Mr. Schwartz's trial. However, that commitment is questionable given the Government's recent request for a jury instruction regarding witnesses who give factual *and* opinion testimony. The Court should prohibit Beeckman from puffing his resume, speculating about others' state of mind and adding information gathered (and known solely) from his witness interviews.

## C.   Alleged Events in Livonia Are Not Intrinsic Acts

The Government seeks to introduce evidence that Reynolds spoke at a Livonia City Council meeting to tout the services provided Rizzo Environmental Services. It suggests that the "Livonia cover story is highly probative of Mr. Schwartz's

---

[3] Unlike the *Khan* case, where the defendant did not object to the evidence and the issue was reviewed for plain error, Mr. Schwartz is making his objection clear here.

6

knowledge of the scheme charged in the indictment." ECF # 71, PageID.2828. Rule 404(b) is clear that "evidence [of any other prior crime, wrong or act] may be admissible for another purpose, such as proving… *knowledge*…" Fed. R. Evid. 404(b) (emphasis added). Therefore, it appears that the Livonia meeting and the "cover story" are acts being offered to prove knowledge.

The Government's citation to *United States v. Sumlin*, 956 F.3d 879 (6th Cir. 2020) is distinguishable. There, the Sixth Circuit addressed the use of "…'intrinsic acts evidence that relates to those acts that 'were necessary preliminaries to the crime charged.'" *Id.* at 889 (citation omitted). The Government's alleged "cover story" call was not preliminary: it occurred well after the alleged promissory note/payments were made and after the Reynolds divorce settlement had been placed on the record in Macomb County Family Court (not to mention after Rizzo began cooperating). Therefore, it should not be admitted under an "intrinsic evidence" theory.

        Respectfully submitted,
        MILLER, CANFIELD, PADDOCK and STONE, P.L.C.

        By: s/ Gerald J. Gleeson, II
           Gerald J. Gleeson, II (P53568)
           840 West Long Lake Road, Suite 150
           Troy, Michigan 48098
           Telephone: (248) 267-3296
           gleeson@millercanfield.com
           *Attorney for Defendant*

Dated: October 21, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2021, I electronically filed the foregoing document, with the Clerk of the court using the ECF system which sent notification of such filing to all attorneys of record.

s/ Gerald J. Gleeson, II
Gerald J. Gleeson, II (P53568)
Miller Canfield Paddock & Stone, P.L.C.
840 West Long Lake Road, Suite 150
Troy, Michigan 48098
Telephone: (248) 267-3296
gleeson@millercanfield.com

38267426.2/156038.00001