# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,　　　　　　　　　　　　Case No. 19-cr-20451

v.　　　　　　　　　　　　　　　　　Hon. Robert H. Cleland

**JAY SCHWARTZ,**

    Defendant.

_____/

| | |
|---|---|
| Michael J. Freeman<br>Special Assistant Attorney to the<br>Attorney General in the EDMI<br>Four Seagate, Suite 308<br>Toledo, OH  43604<br>(419) 241-0724<br>Michael.Freeman2@usdoj.gov<br><br>Gene Crawford<br>Special Assistant Attorney to the<br>Attorney General in the EDMI<br>Four Seagate, Suite 308<br>Toledo, OH 43604<br>(419) 241-0726<br>gene.crawford@usdoj.gov | Thomas W. Cranmer (P25252)<br>Gerald J. Gleeson, II (P53568)<br>Jeffrey A. Crapko (P78487)<br>Miller, Canfield, Paddock and Stone,<br>P.L.C.<br>840 West Long Lake Road, Suite 150<br>Troy, Michigan  48098-6358<br>Telephone: (248) 879-2000<br>cranmer@millercanfield.com<br>gleeson@millercanfield.com<br>*Attorneys for Defendant* |

_____/

## DEFENDANT'S OBJECTION TO PROCEEDING WITH JURY TRIAL DURING COVID-19 PANDEMIC CONDITIONS

The Court has set this matter for trial with jury selection set to commence on November 12, 2021.  Defendant Jay Schwartz will abide by the Court's order and is prepared to try the case to completion.  However, he respectfully objects to proceeding with a criminal jury trial during ongoing COVID-19 pandemic conditions and sets forth the objections below.

Mr. Schwartz understands and appreciates that the Court has made its best efforts to conduct a fair, impartial, and constitutionally-sound jury trial during a global pandemic. However, he respectfully submits that the challenges of the ongoing COVID-19 pandemic—including but not limited to masking requirements, social distancing requirements, and other physical space constraints—create a substantial risk that Mr. Schwartz may be deprived of his right to a fair trial.  Mr. Schwartz respectfully submits this Objection in order to explain and preserve his objections to proceeding with a criminal jury trial during COVID-19 pandemic conditions.

I. **COVID-19 Restrictions Impact Mr. Schwartz's Ability to Assess Prospective Jurors and to Effectively Argue His Case to the Jury.**

The U.S. Supreme Court and the Sixth Circuit have repeatedly recognized the right to a jury trial in criminal cases as a "fundamental" tenet of the American justice system.  *See, e.g.*, *Sowell v. Bradshaw*, 372 F.3d 821, 831 (6th Cir. 2004) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 154 (1968)).  But proceeding with a jury trial

during the ongoing COVID-19 pandemic risks severely compromising that right for Mr. Schwartz.

*Masking requirements.*  Starting with the jury selection process, this Court's masking requirements inhibit Mr. Schwartz from having a full and fair opportunity to assess potential jurors during *voir dire*.  Being able to fully observe and evaluate a prospective juror's demeanor and reactions during the jury selection process—including their facial expressions—can be a critical factor in selecting a fair and impartial jury and a defendant determining if and when to exercise peremptory strikes.  Indeed, the Supreme Court has emphasized the importance of the trial court's "face-to-face opportunity to gauge demeanor and credibility, coupled with information from the questionnaires regarding jurors' backgrounds, opinions, and sources of news . . . to assess fitness for jury service." *Skilling v. United States*, 561 U.S. 358, 395 (2010).  Despite the best efforts of the Court, Mr. Schwartz, the Government, and prospective jurors, masking requirements inherently interfere with that assessment by limiting the Court's ability to gauge prospective jurors' facial expressions and other nonverbal reactions that may weigh on jurors' ability to serve impartially on a jury.

That problem will continue throughout the trial.  Being able to visibly witness jurors' reactions and facial expressions can be crucial in shaping counsel's trial strategy, as well as understanding how jurors are perceiving the witnesses and

evidence and which lines of questioning and argument the jurors find persuasive. The decisions that a defendant makes in response to those assessments about how to present his case to the jury can significantly influence the outcome of the trial. With jurors' faces covered, it is impossible to fully evaluate how jurors are responding to the presentation of evidence as the trial proceeds, thereby severely disadvantaging Mr. Schwartz in his strategic decision-making process.

*Social distancing.* Social distancing requirements are also likely to make it extremely difficult for Mr. Schwartz to effectively view the jury and jurors' reactions during trial. In a typical, pre-pandemic jury trial setting, all twelve jurors would be seated next to each other in the jury box, easily visible to counsel and the defendant at the same time, allowing the defendant and his attorneys to readily see how the jurors are reacting to the presentation of evidence and witnesses. With jurors spread out four rows deep in and in front of the jury box, it is simply not physically possible to observe all twelve jurors' reactions simultaneously with each other and contemporaneously with the evidence being presented. All of those factors would compound the difficulties in the strategic decision-making process already resulting from masking requirements.

*COVID-19 adjournments.* It is also difficult to assess the potential impact of suspending a criminal trial if a juror or participant tests positive for COVID-19. Counsel is aware of at least one jury trial in this District that was delayed earlier this

year due to COVID-19 concerns after jury selection had already begun. If a similar event were to occur in the midst of a criminal trial—after opening statements have been given and witness examination has commenced—the consequences for Mr. Schwartz could be severe. At a minimum, a positive COVID-19 test will cause disruption and delay the trial for rounds of testing and further protocols ensuring that it is safe to proceed with trial. And there is currently no comprehensive strategy for minimizing the disruption and potential exposure that a positive COVID-19 test will cause. For example, replacing the compromised juror with an alternate will not solve the problem, since a positive test will likely mean quarantining. If a witness or attorney tests positive for COVID-19, a delay in the proceedings is almost certain.

Put simply, excusing and then recalling jurors after a delay of potentially a week or more for testing and quarantine[1] will be unworkable in the criminal setting. By the time the jury has been reconvened, jurors' recollections of witness testimony may have already begun to fade or become distorted.[2] At that point, Mr. Schwartz's rapport with the jury will likely also have been irreparably interrupted. Both of those

---

[1] *Quarantine and Isolation*, U.S. CENTERS FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html (last updated Oct. 19, 2021).

[2] *See generally* Joyce W. Lacy & Craig E.L. Stark, *The Neuroscience of Memory: Implications for the Courtroom*, NAT'L REV. NEUROSCI. 649 (Sept. 2013).

outcomes could have a significant impact on the outcome of Mr. Schwartz's trial that is not tethered to the substance of the evidence or the credibility of witnesses.

*Fair Cross Section*. "The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010). Indeed, "the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). After all,

> The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps over conditions or biased response of a judge. This prophylactic vehicle is not provided … if large, distinctive groups are excluded from the pool.

*Taylor*, 419 U.S. at 530.

Unfortunately, the COVID-19 pandemic has likely substantially reduced the Court's Jury Selection Plan's ability to select a meaningful cross-section of the community. It is well-documented that the pandemic has had a disproportionate impact on racial minorities and elderly Americans, with more hospitalizations, deaths, and severe COVID cases occurring in these demographic groups. *See, e.g.*, Centers for Disease Control and Prevention, "Health Equity Considerations and Racial and Ethnic Minority Groups, available online at https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-

5

ethnicity.html#fn3; (Apr. 19, 2021); Centers for Disease Control and Prevention, "COVID-19 Risks and Vaccine Information for Older Adults," available online at https://www.cdc.gov/aging/covid19/covid19-older-adults.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Folder-adults.html (Nov. 9, 2021).  The disproportionate impact and morbidity on these demographic groups is likely to negatively impact the jury venire that appears for Mr. Schwartz's trial.  Individuals who are unvaccinated or at a heightened risk of contracting/being hospitalized with COVID-19 may fail to heed the Court's summons at greater-than-normal rates leading to underrepresentation of vulnerable demographics including minorities and the elderly.  *See United States v. Davis*, 487 F. Supp. 3d 1068, 1069 (D. Col. 2020) ("The court will experience difficulty, due to various public health directives and general health concerns, obtaining an adequate cross-section of the community for jury selection…"); *United States v. Young*, 2020 WL 3963715, at *2 (D. Col. July 13, 2020) ("[I]t is highly likely that, even if a jury is eventually selected, it would not reflect an adequate cross-section of society" given that individuals at heightened risk may seek exclusion for cause).

      Mr. Schwartz's freedom is on the line — the Sixth Amendment guarantees that he be judged by a jury representing a fair cross-section of the community.  But

the COVID-19 pandemic makes that a dubious uncertainty, given that the jury venire is likely to unfairly skew towards younger and non-minority individuals.

## CONCLUSION

Taken together, all of these factors create a significant risk that Mr. Schwartz's Constitutional right to a fair trial may be severely compromised by ongoing pandemic conditions and the resulting courtroom constraints. In order to preserve his potential challenges to the jury trial protocols, Mr. Schwartz respectfully submits the foregoing Objection.

>Respectfully submitted,
>
>Miller, Canfield, Paddock and Stone, P.L.C.
>
>By:  s/Gerald J. Gleeson, II
>Thomas W. Cranmer (P25252)
>Gerald J. Gleeson, II (P53568)
>Jeffrey A. Crapko (P78487)
>840 West Long Lake Road, Suite 150
>Troy, Michigan  48098-6358
>Telephone: (248) 879-2000
>cranmer@millercanfield.com
>gleeson@millercanfield.com
>*Attorneys for Defendant*

Dated:  November 10, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2021, I electronically filed the foregoing document, with the Clerk of the court using the ECF system which sent notification of such filing to all attorneys of record.

s/ Gerald J. Gleeson, II
Gerald J. Gleeson, II (P53568)
Miller Canfield Paddock & Stone, P.L.C.
840 West Long Lake Road, Suite 150
Troy, Michigan 48098
Telephone: (248) 267-3296
gleeson@millercanfield.com
