**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 19-20451

JAY SCHWARTZ,

Defendant.
__________________________________/

**OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO PROCEEDING WITH JURY TRIAL DURING COVID-19 PANDEMIC**

Defendant Jay Schwartz was charged in July 2019 with three felonies—for violating 18 U.S.C. § 666(a)(2); 18 U.S.C. § 371; 18 U.S.C. § 2—for his alleged role in an expansive public corruption conspiracy in Macomb County, Michigan. After numerous delays, due principally to the Coronavirus Disease ("COVID-19"), on September 7, 2021 the court entered a *stipulated* order setting a trial date of November 12, 2021. (*See* ECF No. 61.) Only two days before the scheduled commencement of trial, Defendant has now filed an "Objection to Proceeding to Trial During Covid-19 Pandemic Conditions." (ECF No. 78.) Defendant has raised four arguments for why the trial cannot go forward at this time. The government has now filed a response opposing the objection. (ECF No. 81.) For the reasons provided below, the court will overrule Defendant's objection.

## I. BACKGROUND

Like other courts, operations at the Eastern District of Michigan were significantly impacted when the COVID-19 pandemic began to spread around the country in March

2020. On March 13, 2020, Chief Judge Denise Page Hood entered administrative orders indefinitely suspending all in-person proceedings and authorizing the use of video technology for certain hearings.[1] *See* Administrative Order Nos. 20-AO-021; 20-AO-027. Because jury trials were effectively barred by this order, a significant backlog of trial-ready cases accumulated throughout the District.

Following the wide availability of vaccinations for COVID-19, in September 2021, the Eastern District of Michigan reopened its courthouses and implemented additional procedures, facility upgrades, and social distancing policies to reduce the chance that COVID-19 will be spread within the facilities. As relevant here, every person who enters the courthouse must complete a health screening, wear a facemask, and socially distance.[2] *Eastern District of Michigan Policies and Procedures for Jury Trials*, https://www.mied.uscourts.gov/pdffiles/Policies_and_Procedures_for_Jury_Trials.pdf [https://perma.cc/JV9A-DNKZ] (last visited Nov. 10, 2021). In the Port Huron courthouse, plexiglass shields are mounted on the courtroom desks and elsewhere, and enhanced air filtration systems have been installed.

To reduce the odds that other jurors end up in "close contact"[3] with a juror who contracts COVID-19, the courtroom has been physically rearranged to promote proper social distancing between the masked jurors throughout a trial.

---

[1] The Order also included a blanket finding of excludable delay for purposes of the Speedy Trial Act, 18 U.S.C. § 3161.

[2] As the court has previously indicated to the parties, the court intends that any witnesses testifying will wear a face shield to ensure that all have a clear view of their face and attorneys have also been given the option of wearing a face shield while presenting.

[3] According to Center for Disease Control guidelines, an individual only needs to quarantine if they are unvaccinated and have been in close contract for "with someone who has COVID-19" for "a cumulative total of 15 minutes or more over a 24-hour



**Image 1**

As the image above illustrates, this rearrangement involved adding two extra rows of jurors in the well of the courtroom and a ninety-degree repositioning of the counsel tables to enhance visibility. A strip of obscure film is installed to lessen the chance of sensitive matters on counsels' tables being visible to nearby jurors.

## II. DISCUSSION

Now, on the (literal) eve of trial, after stipulating to the present trial date in September 2021, Defendant changes his tune and argues that the trial cannot go forward under the current pandemic conditions without "severely compromising" his Sixth Amendment right to a criminal jury trial. (ECF No. 78, PageID.2858.)

### A. Masking Requirements

---

period." *Quarantine and Isolation*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html (last visited Nov. 10, 2021). So, this distancing greatly reduces the chance that the trial will need to be suspended if a juror tests positive.

Defendant first argues that the District's current masking requirement will prevent him from "[b]eing able to fully observe and evaluate a prospective juror" during *voir dire* and will also prevent him from "[b]eing able to visibly witness jurors' reactions and facial expressions" during trial. (*Id.*, PageID.2858.) Despite numerous trials that have occurred during the COVID-19 pandemic, Defendant can find no authority "for the proposition that the entirety of jurors' faces must be visible at all times throughout the trial." *See United States v. Trimarco*, No. 17-CR-583, 2020 WL 5211051, at *5 (E.D.N.Y. Sept. 1, 2020). All courts that have considered this question so far have universally reached the conclusion that a defendant can still assess a juror's credibility and demeanor during both *voir dire* and trial while the juror is wearing a face mask. *See, e.g.*, *id.* (rejecting a constitutional right to a maskless jury because "Defendant's attorneys can still observe and evaluate other aspects of jurors' body language that will be fully visible during the trial"); *United States v. Crittenden*, No. 4:20-CR-7, 2020 WL 4917733, at *8 (M.D. Ga. Aug. 21, 2020) ("Of course, under normal circumstances, being able to see a potential juror's full facial expressions may be tactically preferable. But the Court is unconvinced that it is required by the Constitution. Through their review of informative juror questionnaires and questioning during *voir dire*, the parties should be able to obtain sufficient information to detect bias, disqualify jurors for cause, and exercise peremptory challenges. That is what the Constitution requires."); *United States v. Thompson*, No. CR 19-1610 MV-4, 2021 WL 2402203, at *5 (D.N.M. June 11, 2021) ("[T]he Court is aware of no authority . . . holding that the Sixth Amendment right to an impartial jury or Due Process demand that the defendant have unimpeded visual access to prospective jurors' facial expressions during jury selection. . . . The Court believes that [defendant's]

ability to ask questions during *voir dire* and to see the upper half of prospective jurors' faces is enough to satisfy his constitutional rights during jury selection."); *United States v. Tagliaferro*, No. 19-CR-472, 2021 WL 1225990, at *4 (S.D.N.Y. Mar. 31, 2021) ("As noted above, despite the District's mask mandate, [defendant] is still free to examine and assess juror credibility in all critical aspects besides the few concealed by the wearing of a mask.")

While the court recognizes that the masking requirement may create some practical challenges, the court remains unconvinced that such a requirement infringes on Defendant's constitutional rights. As sister courts have noted, Defendant still has multiple means of assessing juror credibility. The court finds that the masking requirement is not a sufficient reason to justify delaying trial further.

**B. Social Distaining Requirement**

Defendant next argues that the "social distancing requirements are also likely to make it extremely difficult for Mr. Schwartz to effectively view the jury and jurors' reactions during trial." (ECF No. 78, PageID.2859.) He argues that "[w]ith jurors spread out four rows deep in and in front of the jury box, it is simply not physically possible to observe all twelve jurors' reactions simultaneously." (*Id.*)

The court is not convinced by this argument as it lacks any precedential basis. The court sees no indication that the Constitution guarantees a right permitting a Defendant to observe all jurors' reactions *simultaneously*. Furthermore, as the photographic image above demonstrates, the current arrangement is unlikely to have any material impact on the Defense counsel's ability to view jurors. The increased spacing between the jurors, and the fact that the permanent jury box is raised, means

that jurors in the back rows are not likely to be obscured. To the court's eye –based in part on actually sitting in various juror and attorney positions to assess lines of sight—it appears quite possible to view all the jurors at once. In fact, the present courtroom arrangement means that Defendant (and especially his counsel arguing from the lectern) will be closer to many members of the jury than they would be in this courtroom's ordinary setup. The court finds this concern to be both factually unfounded and unsupported by precedent.

**C. COVID-19 Adjournment**

Defendant next argues that "the potential impact" of a positive COVID-19 test among trial participants or the jury would be a delay and disruption of the trial that could result in prejudice against the Defendant. (*Id.*, PageID.2860.) Defendant notes the fact that at least one jury trial in the Eastern District of Michigan was temporarily suspended after a positive COVID-19 test was registered by a court staff member. (*Id.*) At the current time, however, such concerns are speculative. It cannot be denied that such a delay is possible, but the court is aware also that a number of trials have been held successfully throughout the country (and in this District) despite ongoing COVID-19 concerns. And, as explained above, the court has implemented social distancing and masking requirements to lessen the possibility that a single positive COVID-19 test among the jury will require a delay of trial. The relatively short predicted length of this trial—about a week—should also diminish such concerns because the odds of a positive case occurring during a single-week trial are smaller than in a longer proceeding. If a suspension of the trial does occur, Defendant is free to bring a motion

arguing that the delay has caused him prejudice, but the court will cross that bridge only if it comes to it.

**D. Fair Cross Section of the Community**

Defendant's final objection to commencing his jury trial at this time is that "the COVID-19 pandemic has likely substantially reduced the Court's Jury Selection Plan's ability to select a meaningful cross-section of the community as required by the Sixth Amendment. (*Id.*, PageID.2861.) He argues that because "the pandemic has had a disproportionate impact on racial minorities and elderly Americans," such individuals are now more likely to "fail to heed the court's summons." (*Id.*)

In support, Defendant cites two 2020 Colorado district court opinions. In both opinions, the court provided a number of reasons why the defendant's speedy trial rights would not be violated by a further delay. The district court, in these opinions, cited the difficulty presented by obtaining an average cross-section of the community during the pandemic as a reason supporting further delay. *See United States v. Davis*, 487 F. Supp. 3d 1068, 1070 (D. Colo. 2020); *United States v. Young*, No. 19-CR-00496-CMA, 2020 WL 3963715, at *2 (D. Colo. July 13, 2020). The court is simply not persuaded by two now factually outdated opinions that provide only the most cursory review of the issue.

. The Supreme Court has held that "[t]he Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross[-]section of the community," *Berghuis v. Smith*, 130 S.Ct. 1382, 1387 (2010), but it has not held that a defendant is entitled to a jury of any particular racial or age composition. Defendant has provided merely speculation that the composition of his jury

*may* be materially changed by the ongoing pandemic and provides no actual studies or statistics in support of this proposition. The Supreme Court in *Duren v. Missouri,* 439 U.S. 357, 364 (1979) provided a rather rigorous three-part test for adjudicating such jury composition claim. Such a claim "must demonstrate that (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group is not fair and reasonable; and (3) the underrepresentation was due to a systematic exclusion of the group in the selection process." *United States v. Smith*, 463 F. App'x 564, 571 (6th Cir. 2012) (citing *Duren*, 439 U.S. at 364). Defendant's briefing makes no effort to satisfy these three prongs.

The only support Defendant provides for his perspective are two passing comments in opinions that were written in 2020 before any COVID-19 vaccinations had been authorized for use by the public. *See Davis*, 487 F. Supp. 3d at 1070; *Young*, 2020 WL 3963715, at *2. The situation today, with widespread availability of the COVID-19 vaccinations and a general relaxing of social distancing requirements, is materially different than conditions in early-to-mid 2020.[4] Now that the country has moved toward a greater level of normalcy, more recent opinions have rejected such jury cross-section arguments. In *Trimarco*, for instance, the court found a similar argument was "premature at this juncture" because it lacked any specific facts on the actual composition of the jury pool. *See Trimarco*, 2020 WL 5211051, at *5.

And even if Defendant were able to show that the ongoing nature of the pandemic resulted in some small "absolute disparity" in the jury pool, that alone is not enough to

[4] As of November 1, 2021, 80 percent of adults are now vaccinated. *See* Mychael Schnell, *70% of US adults are fully vaccinated, 80% partially*, The Hill, (Nov. 1, 2021).

sustain a valid Sixth Amendment claim. *See, e.g., Howell v. Superintendent Rockview SCI,* 939 F.3d 260, 268 (3d Cir. 2019) (pointing out that "numerous courts have [previously] noted that an absolute disparity [in jury composition] below 10% generally will not reflect unfair and unreasonable representation"); *Trimarco*, 2020 WL 5211051, at *5 (noting that "even if this case had been tried before the onset of the pandemic, older people and those with pre-existing health conditions may have been excluded from the jury anyway" because the local selection plan "permits excusal from jury duty in response to individual requests by persons over 70 years of age.") (quotations omitted). Because Defendant has failed to plausibly lay out all the elements required for a jury composition claim, *see Duren*, 439 U.S. at 364, the court also rejects this argument.

## III. CONCLUSION

For the reasons explained above, the court finds that the trial should go forward as scheduled as Defendant's objection lacks merit. Accordingly,

IT IS ORDERED that "Defendant's Objection to Proceeding with Jury Trial During COVID-19 Pandemic Conditions" (ECF No. 78) is OVERRULED.

s/Robert H. Cleland /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: November 12, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 12, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner /
Case Manager and Deputy Clerk
(810) 292-6522